UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X
LAMONT DEVORCE,

                        Petitioner,                 DECLARATION

      -against-                        04 Civ 6155(CM)(MDF)

WILLIAM PHILLIPS, Superintendent,
Green Haven Correctional Facility,

                        Defendant.
--------------------------------------------------X

      Lamont Devorce, being duly sworn, deposes and says under the pains and penalty of

perjury, pursuant to 28 U.S.C. §1746 that, the following allegations are true and accurate, except

for those allegations made upon information and belief which are believed to be true:

      1. I am the petitioner herein and submit this declaration along with the accompanying

memorandum of law, in support of my application for a writ or habeas corpus, and in reply to the

respondent's (ADA of Westchester County, Alexander Levine and Joseph M. Latino of Counsel)

answer and memorandum of law.

      2. The source for the allegation made upon information and belief, are in support of the

original record below, which consist of the hearing, trial and sentencing transcript, appellate

proceedings, and the state court decisions.

      3. Petitioner's habeas petition challenges his trial by jury, in County Court, Westchester

County, for the judgment convicting him of, assault in the first degree, robbery in the first degree

(twelve counts involving six individuals and two different theories of robbery), and attempted

robbery in the first degree (two counts involving one individual on two different theories of

attempted robbery), and his appeals thereafter.

      4. On September 15, 1998 petitioner was sentenced as a second felony offender to

concurrent indeterminate terms of imprisonment of twelve and one-half year to twenty-five years

for the crime of robbery in the first degree (12 counts) six of which were to run consecutively with

the indeterminate sentence of imprisonment of seven and one-half to fifteen years for the crime of

assault in the first degree, attempted robbery in the first degree (two counts), and criminal

possession of a weapon in the second degree.

5. On or about November 27, 2000 petitioner, through his appellate counsel, Law Office of

Adam S. Cohen (Mr. Cohen, Esq., of counsel), filed an appellate brief with the Appellate Division,

Second Department, raising, inter alia, the following claims:

### POINT I

*court*

### THE TRIAL COMMITTED PREJUDICIAL ERROR IN DENYING CHALLENGES OF PROSPECTIVE JURORS FOR CAUSE

### POINT II

### THE TRIAL COURT ERRED IN DENYING THE BATSON CHALLENGE MADE BY THE DEFENSE

(See Resp't's Ex. "A")(The People filed a respondent's brief addressing all of petitioner's claims

(See Resp't's Ex. "B")).

6. On April 8, 2002 petitioner's appeal was unanimously affirmed by the Appellate

Division : Second Department. See People v. Devorce, 293 A.D.2d 550 (2d Dept. 2002)

Resp't's Ex. "C"). In affirming his conviction the Appellate Division unreasonably determined:

> **"The defendant failed to make a 'prima facie' showing that the People's peremptory strikes were racially motivated pursuant to Batson v. Kentucky (476 US 79). Although he alleged that the People had established a pattern of striking black jurors, he failed to cite any other facts or circumstance to support his claim of racial bias (see People v. Bollings, 79 N.Y.2d 317, 324; People v. Cousin, 272 A.D.2d 620; People v. Williams, 253 A.D.2d 901; People v. Morla, 245 A.D.2d 468).**

**\* \* \* \* \* \***

> **The defendant's remaining contentions are either unpreserved for appellate review or without merit.**

7. After leave to the New York State Court of Appeals was denied (People v. Devorce, 98

N.Y.2d 709 (2002)(Ciparick)(see Resp't's Ex. "D" through "F"), petitioner, acting pro se, filed a

writ of error coram nobis in the Appellate Division arguing (1) appellate counsel's

ineffectiveness. Particularly, petitioner argued appellate counsel should have argued before the

appellate division the fact the prosecution did not give a race neutral explanation for striking at

least two prospective jurors (Ms. Godbold, Mr. Sears, and Ms. Williams) after trial counsel had

2

made a prima facie showing of striking black jurors; (2) appellate counsel should have presented to the appellate division the colorable claim of trial counsel's ineffectiveness in failing to press the trial court to mandate the prosecutor to give race neutral reasons for its strike of several black jurors (Resp't's Ex. "G")(The respondent filed an opposition arguing (1) counsel provided effective assistance to petitioner and, (2) the People exercised its peremptory challenges to exclude three prospective jurors in a manner which was consistent with *Batson v. Kentucky* (476 US 79) (Resp't's Ex. "H").

8. On November 10, 2003 the appellate division unreasonably denied petitioner's coram nobis in the following decision:

> **"Application by the appellate for a writ of error coram nobis to vacate, on the ground of ineffective assistance of appellate counsel, a decision and order of this court dated April 8, 2002 (*People v. Devorce*, 293 AD2d 550), affirming a judgment of the County Court, Westchester County, rendered September 15, 1998.**
>
> **ORDERED that the application is denied.**
>
> **The appellant has failed to establish that he was denied the effective assistance of appellate counsel (see *Jones v. Barnes*, 463 US 745).**

9. Again the New York State Court Appeals denied petitioner leave to appeal. See *People v. Devorce*, 1 N.Y.3d 262 (2004) (Ciparick, J.) (Resp't's Ex. "K").

10. On June 2, 2004 petitioner filed a writ of habeas corpus dated May 21, 2004 in this court raising amongst other things, ineffective assistance of counsel due to counsel's failure at trial to request that the trial court provide an accomplice jury charge.

11. Petitioner then sought a CPL §440.10 motion arguing he was denied effective assistance of counsel and a fair trial because his trial attorney failed to request an accomplice instruction (see Resp't's Ex. "L"). Petitioner also argued his sentence was infirm as Penal Law §70.25(2) is unconstitutional because it permits the Court, rather then jury to enhance petitioner's sentence.

12. The People opposed petitioner's motion (see Resp't's Ex. "L"), and Judge Zambeli in a Decision and Order dated July 13, 2004, denied petitioner's CPL §440.10 motion.

3

13. On September 22, 2004 the Appellate Division after considering petitioner's CPL §460.15 motion, the respondent's affirmation (Resp't's Ex. "O" & "P"), denied petitioner's leave application.

14. Petitioner then filed an amended habeas petition, dated November 1, 2004, to include as part of his petition the colorable claim of trial counsel's ineffectiveness in failing to object to the fact petitioner's equal protection rights were violated during his jury selection process; (2) petitioner was denied his right to a jury trial, when the court, instead of the jury, imposed an enhanced consecutive sentence that surpassed the statutory maximum sentence for which the jury found him guilty.

15. Now upon reading the record in its entirety, appellant moves pursuant to 28 U.S.C. §2254(d)(1), (2), arguing (1) the trial court erred in denying his Batson challenges; (2) appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in not objecting to the court's defect of not ordering the prosecutor to give race-neutral reasons for his strikes against African-American jurors.

16. For the reasons more fully set forth in the accompanying memorandum of law, it is petitioner's position that the state court's resolution of Grounds One and Three of his habeas petition was an unreasonable application of clearly established federal law prescribed by the United States Supreme Court in *Batson v. Kentucky* and *Strickland v. Washington*; the remaining issues raised, petitioner withdraws them from his habeas petition at this time.

WHEREFORE, petitioner respectfully request that his petition be granted in its entirety.


DATED:     December 28 2006
           Stormville, New York



                    Respectfully submitted,

                    Lamont Devorce
                    Lamont Devorce
                    Petitioner pro se
                    Green Haven Correctional Facility
                    P.O. Box 4000
                    Stormville, New York 12582-0010

                              4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
LAMONT DEVORCE,

               Petitioner,               **MEMORANDUM OF LAW**

         -against-                04 Civ 6155(CM)(MDF)

WILLIAM PHILLIPS, Superintendent,
Green Haven Correctional Facility,

               Respondent.
------------------------------------------------------X

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of petitioner's ("Devorce's") habeas

petition (28 U.S.C. §2254(d)(1), (2)), in reply to the respondent's answer and memorandum of law.

## QUESTION PRESENTED

WHETHER MR. DEVORCE'S WRIT OF HABEAS CORPUS
SHOULD BE GRANTED BECAUSE HIS CONSTITUTIONAL
RIGHTS TO EQUAL PROTECTION AND DUE PROCESS OF
THE LAW, A FAIR TRIAL, WERE VIOLATED WHEN (1)
THE TRIAL COURT UNREASONABLY DENIED HIS
BATSON CHALLENGES; (2) APPELLATE COUNSEL
PROVIDE)INEFFECTIVE ASSISTANCE OF COUNSEL BY,
AMONGST OTHER THINGS, FAILING TO RAISE TRIAL
COUNSEL'S INEFFECTIVENESS DURING JURY
SELECTION.

## THE FACTS[1]

Petitioner's conviction stems from the Edo's Japanese Steakhouse Robbery in Pelham

New York. Based on those allegations petitioner was not found guilty of assault of a police

office or attempted murder, on September 15, 1998 during his trial by jury, in County Court,

Westchester County, instead, was found guilty of, Assault in the First Degree, Criminal

Possession of a Weapon in the Second Degree, Robbery in the First Degree (12 Counts,

involving six individuals on two different theories of robbery), and Attempted Robbery in the

---

1. For a complete reading of the facts petitioner directs this court to the State court appellate
briefs as well as the minutes themselves. Numerical references preceded by "T" and then a
number refers to the jury selection minutes dated June 25 and 26, 1998.

First Degree (2 Counts, involving one individual on two different theories of Attempted

Robbery); and was thereafter sentenced to twelve and one-half years to twenty-five years for

the crimes of Assault in the first degree for the crimes of robbery in the first degree (12 counts),

seven and one-half years to fifteen years for the crimes of assault in the first degree, attempted

robbery in the first degree (2 counts), and criminal possession of a weapon in the second

degree. The sentence for six robbery in the first degree counts were ordered to run

consecutively to the other sentence, which were ordered to run concurrently with each other.

During jury selection petitioner raised a Batson challenge based on the prosecutor's use

of three peremptory challenges against black jurors. Petitioner argued that since the

prosecution had already exercised three of them against black jurors' a prima facie case of race

based discrimination was established. The Appellate Division agreed with petitioner that a

pattern of strikes was established, but concluded no other evidence arose to the level to support

his claim the prosecutor struck the jurors' in a discriminatory manner.

## ARGUMENTS

> MR. DEVORCE'S WRIT OF HABEAS CORPUS SHOULD BE
> GRANTED BECAUSE HIS CONSTITUTIONAL RIGHTS TO
> EQUAL PROTECTION AND DUE PROCESS OF LAW, A
> FAIR TRIAL, WERE VIOLATED WHEN (1) THE TRIAL
> COURT UNREASONABLY DENIED HIS BATSON
> CHALLENGES; (2) APPELLATE COUNSEL PROVIDED
> INEFFECTIVE ASSISTANCE OF COUNSEL BY, AMONGST
> OTHER THINGS, FAILING TO RAISE TRIAL COUNSEL'S
> INEFFECTIVENESS DURING JURY SELECTION.

The respondent's argument petitioner has failed to exhaust his Batson claim, in any event,

the trial court properly denied his (Batson) challenges, is baseless, and contrary to or involves

an unreasonable application of clearly established federal law as announced in *Batson v.*

*Kentucky*, 476 U.S. 79 (1986) and its progeny'.

A.    **Exhaustion Requirement**

Before Mr. Devorce may seek federal habeas review from his state court conviction he is

required by 28 U.S.C. §2254(b)(1), (A) to first exhaust all remedies available to him in state

2

court. See *Morgan v. Bennett*, 204 F.3d 360, 369-71 (2d Cir. 2000); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). As the United States Supreme Court has made clear, exhaustion requires the petitioner to alert the State court's to the federal nature of the claims, and raising the claim in the "highest state court." See e.g., *O'Sullivan v. Boerckel*, 529 U.S. 838, 940 1999)("State prisoner's must give the state courts one full opportunity to resolve any constitutional issues by involving one complete round of the state's established appellate review process"); see also, *Cox v. Miller*, 296 F.3d 89, 99 (2d Cir. 2000), cert. denied., 123 S.Ct. 1273 (2003); *Smalls v. Batista*, 191 F.3d 272, 277 (2d Cir. 1999); *Daye v. Attorney General*, 696 F.2d 194 (2d Cir. 1982)(en banc), cert. denied., 464 U.S. 1048 (1984).

To satisfy this test, petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "opportunity to pass upon and correct alleged violations of . . . its prisoner's federal rights." *Picard*, 404 U.S. at 275 (citation omitted); see also, *Jackson v. Edwards*, 404 F.3d 612, 618-19 (2d Cir. 2005); *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir.), cert. denied, 124 S.Ct. 804 (2003). This does not require the petitioner to cite chapter and verses of the Constitution. *Daye*, 696 F.3d at 19. As long as the state courts are apprised of the constitutional nature of petitioner's claim[s], the exhaustion requirement is generally fulfilled and the AEDPA's exhaustion requirement has been met. See, *Jones v. Vacco*, 126 F.3d 408 (2d Cir. 1997); *Bossett v. Walker*, 41 F.3d 828 (2d Cir. 1994)(citation omitted), cert. denied, 514 U.S. 1054 (1995).

Here Mr. Devorce has cited State Court cases which made reference to federal law (*Jackson v. Edwards*, supra) and has argued his constitutional violations in his leave letter application to the New York State Court of Appeals in such away of informing the state court's of his federal claims. Thus, adequately putting the state on notice of the federal nature of the claims he now advances in his habeas petition. Still in all, the respondent would have this court belief the AEDPA requires petitioner's claims be foreclosed as they have not been properly presented to New York's Highest Court (See Resp't's Memo of Law pg. 4-8). This is an incorrect assessment of the instant record and the AEDPA.

3

For example, in seeking leave petitioner appendix the briefs which he submitted to the Appellate Division and asked of the Court of Appeals to "consider each of the issues raised in" the brief (See Resp't's Ex. "D"). Thus, the respondent's assertion that petitioner didn't present the briefs to the Court of Appeals belies their own exhibit (Resp't's Aff. p. 28 -- Resp't's memo of Law pg. 6). In any event, while petitioner's appellate attorney may have been asking the Court of Appeals to search the record for a constitutional (or other) issue worthy of further review; respondent--instead of trying to establish the baseless claim that petitioner has not exhausted his federal claims--is constrained to concede that, for purpose of AEDPA's exhaustion requirement, petitioner's leave application for discretionary review was sufficient to "fairly present" his claims to the Court of Appeals. See *Morgan v. Bennet,* 204 F.3d 360, 369-71 (2d Cir. 2000); accord *Davis v. Strack,* 270 F.3d 111, 122-23 (2d Cir. 2001). As his letter application, although not argumentative, mentioned all the issues he presented to the Appellate Division and was a "fair import" of which request for review of all the issues outlined in the attached brief. See *OQuendo v. Senkowski,* N.Y.L.J., 10/2/06 (S.D.N.Y. 2006). He may now present his claims to this habeas court as he has exhausted those claims by "fairly presenting" them to the State's highest court. *Allen v. Kelly,* 32 F. Supp.2d 592, 597 (W.D.N.Y. 1998); *Evans v. Court of Common Please,* 959 F.2d 1227, 1332 (3rd Cir. 1992); *Galdamez v. Keane,* 394 F.3d 68, 76-77 (2d Cir.), cert. denied, 125 S.Ct. 1996 (2005); *Duncan v. Henry,* 513 U.S. 364, 365-66 (1995); *O'Sullivan v. Borckel,* 529 U.S. 838, 940 (1999).

In turning on the merits of petitioner's <u>Batson</u> claim, it is without question, the state court's adjudication, on its merits, is "contrary to" or involves an "unreasonable application" of clearly established federal law as determined by the United States Supreme Court in *Batson v. Kentucky,* 476 U.S. 79 (1986). See *Galarza v. Keane,* 252 F.3d 630, 638-39 (2d Cir. 2001)(Walker C.J., Dissenting).

B.    **The State Court's Ruling Denying Petitioner's Batson Challenge was Contrary to and Involves an Unreasonable Application of Clearly Established Federal Law.**

The state court's adjudication that petitioner has not made a prima facie case of discrimination even though he established a pattern of striking black jurors, he failed to cite any

other facts or circumstances to support his claim, is simply contrary to <u>Batson</u> and its teaching.

Pursuant to the AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in state court proceedings where the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established Federal Law governing scrutiny of the exercise of peremptory challenges during jury selection is *Batson v. Kentucky*, 476 U.S. 79 (1986) and its progeny. In <u>Batson</u>, the Supreme Court held that the Equal Protection Clause forbids a party from exercising peremptory challenges to remove potential jurors solely on the basis of race. *Struauder v. West Virginia*, 100 U.S. 303, 308 (1890); *Swain v. Alabama*, 380 U.S. 202 (1965); see also, *Rice v. Collins*, 126 S.Ct. 969 (2006). Thus, the <u>Batson</u> Court established a three-step burden-shifting framework for the lower courts to use in evaluating whether a peremptory challenge is race based. *Hernandez v. New York*, 500 U.S. 352, 358 (1991)(explaining the three-steps). First the moving party must make out a prima facie case of racial discrimination, which requires a showing: "(1) that he was a member of a cognizable racial group;  (2) that the prosecutor exercised peremptory challenge to remove persons of the defendant's race from the venire; and (3) that there was sufficient facts and circumstance to raise an inference that the prosecution utilized the preemptory to exclude members from the venire on the basis of race." *Batson*, 476 U.S. at 96; see also, *Johnson v. California*, 125 S.Ct. 2410, 2413, (2005). At the second step, the non-moving party must offer race-neutral reasons for its strikes (*Batson*, 476 U.S. at 94); at the third step, the trial court must determine whether the moving party has met the burden of proving that purposeful discrimination motivated the challenge. *Purkett v. Elem*, 514 U.S. 765 (1995). When viewing the record, as a whole, this case is sufficient to review the claim and demonstrates the state courts ruling was contrary to and/or an unreasonable application of

clearly established federal law. *McKinney v. Artuz*, 326 F.3d 87 (2d Cir. 2003).[2]

1.    <u>The State Court's Adjudication that a Prima Facie Case did not Exist is Contrary to and Involves an Unreasonable Application of Batson.</u>

In order to reasonably discharge its duty of determining whether petitioner had raised a prima facie case under <u>Batson</u>, the trial court was obliged to review all the relevant facts and circumstances, including the inference of discrimination raised by the prosecutor's pattern of strikes as a whole.  Clearly the trial court did not do this which led to a flawed <u>Batson</u> analysis.

In the case at bar, petitioner raised several <u>Batson</u> claims of purposeful racial discrimination in response to the prosecutor's systematically peremptory challenges to African Americans (or dark-skinned) juror from petitioner's panel.   In fact, as established in state court the prosecution systematically excluded prospective juror Yvonne Godbold and Anthony Sears during the first round (T. 216).   Petitioner raised a <u>Batson</u> objection arguing:

> "Your, Honor, I will just note for the record that they are the only two African-Americans who are on this panel . . . . . And I don't see any reason for Miss Godbold, other then the fact that's she's black.

> MR. INSERO:  I join in that -- application and I am making a <u>Batson</u> inquiry request of the prosecutor, Mr. Neary.

> THE COURT: Mr. Neary, what do you say to that.

(T. 217)

The prosecutor justified itself by stating it had accepted Ms. Onehenyo who was an African-American:

> MR. NEARY:  I say to that they have to establish that some kind of pattern is being used by the People to eliminate jurors. I note for the record, Judge, there appears to be another black female and she is totally acceptable to the People, if the court requires me, I have reasons to justify my peremptory challenge

---

2. The threshold decision concerning the existence of a prima facie of discriminatory use of peremptory challenges involves both issues of fact and issues of law. *Overton v. Newton,* 295 F.3d 270, 276 (2d Cir. 2002); *United States v. Alvarado*, 891 F.2d 439, 443 (2d Cir. 1989), vacated on other grounds, 497 U.S. 543 (1990). On federal habeas review, mixed questions of law and facts are "subjected to the standard set forth in 28 U.S.C. §2254(d)(1). *Overton,* 295 F.3d at 277.

of Godbold, but I don't think that the defense has established
any pattern being used by the People.

This was objectively unreasonable. See, e.g., *Harris v. Kuhlmann*, 346 F.3d 330 (2d Cir.
2003)(fact that prosecutor initially accepted one black juror is not alone sufficient to refute
otherwise appropriate inference of discriminatory use of peremptory strikes); see also, *United
States v. Clemons*, 843 F.2d 741 (3d Cir. (1988)(striking single black juror may show prima
facie case even when blacks ultimately sit on panel and even when valid reasons exist for
striking other blacks); *People v. Davis*, 253 A.D.2d 634 (1st Dept. 1998)(exclusion by the
prosecution of one African American juror without explanation sufficient to warrant new trial).

The prosecutor's justification for striking Godbold and Sears by arguing petitioner had
failed to establish a pattern of discrimination of excluding African Americans (T. 217), which
the Court agreed with, was also objectively unreasonable. See, *Harris*, 346 F.3d at 345 (where
every black juror was subject to a peremptory strike, a pattern plainly exist. As the District
Court observed, "five black venire persons were challenged peremptory by the prosecutor and
removed from the jury panel)(citing, cf., *United States v. Alvarado*, 923 F.2d 253, 256 [2d Cir.
1991]).

In Batson, the high court noted, one method of proving a prima facie case is the
discernment of a "pattern" of strikes against panelists who are members of a particular protected
groups. *Batson*, 476 U.S. at 96-97. The key word the court should focus on is "one method."
Indeed, the Batson court was articulating clear language which suggest the movant may satisfy
the first prong of its three-step process by showing a "pattern of strikes" or raising other facts
then the pattern itself. *Truesdale v. Sabourn*, 427 F. Supp.2d 451, 458-59 (S.D.N.Y. 2006)("a
'pattern' of strikes against black jurors included in the particular venire might give rise to an
inference of discrimination.")(quoting *Batson* 476 U.S. at 96-97); *Anderson v. Superintendent,
Elmira Correctional Facility*, 360 F.Supp.2d 477, 493-94 (prosecutor's strikes was used to
control the number of African-American jurors on defendant's jury)(pending in the Second
Circuit).

What is interesting about this case, the prosecution then struck Ms. Loran Smith for cause

7

(T. 124-25); but when petitioner put the challenge in question, as he felt the prosecutor was improperly excluding her because she was a Jehovah witness (T. 126-28); the Court denied that challenge (T. 138) and the prosecutor then used a peremptory challenge to strike Ms. Smith (T. 138). Petitioner raised another Batson objection noting this was another African-American women who was being struck by the prosecutor:

> MR. INSERO: "We have a black women, a member of the jury panel. She has been challenged for cause. The cause was denied. She's now being challenged peremptorily. This is the second African-American that the prosecutor has chosen to strike from this jury peremptorily, and I would like an explanation for his peremptory challenge in this case.

(T. 138-140).[3]

The prosecutor offered a reason for Ms. Smith's challenge (T. 140-45), which petitioner retorted as pretextual; the prosecutor couldn't show race-neutral reasons for excluding Ms. Smith:

> "Mr. Hughes is attempting to come up with race-neutral reasons, but I object strenuously to the religious reasons for keeping these people off. I think that's in violation of several Federal statues to deprive people of their religious freedom and their rights to serve on a jury. Those people that Mr. Hughes has just sought to kick off because their religious beliefs have a right to sit on this jury.
>
> "The record will speak for itself, Judge. An Appellate Court will review that aspect of this proceeding should that come to pass. But I do object to both the racial and the religious reasons.

(T. 146-47).

The prosecutor then sought peremptory strikes against Betty Williams another African-American female:

> THE COURT: . . . . Now, on Horme, Williams, Campbell, Serina, Lamara and Duffy, the People, any peremptory challenges:

---

3. At that point the trial court made clear for the record: 16 jurors sat on the first panel 2 of which were African Americans. Jury four the people exercised a peremptory and juror one was selected as a juror. Now on (the second round) the ten we just reviewed number five and ten are African American. At that moment the prosecutor attempted to justify his strike by stating he was not attempting to remove Mr. Browne (140-141). This justification of Browne, by itself supports the inference that the challenge to Smith was actually motivated by her race.

MR. NEARY: Yes, as to Williams, Cambell and Duffy.

MR. GERBER: Judge, as to Ms. Williams, I just not for the record again that she is a black female.

MR. INSERO: Judge, I'm making a Batson challenge here.

MR. GERBER: And I would do the same, your honor.

MR. INSERO: This is another black African-American woman peremptorily behind tossed by the Prosecutor. This is number five, I think. The record will show that.

THE COURT: You have to make a motion, Mr. Inerso, with other than based on ---

MR. INSERO: It seems to be a systematic exclusion of African-American. We have had in the last several rounds the same thing, and there clearly seems to be a pattern here of excluding black African-Americans from there jury.

Your Honor, I don't know if it's in the record, but I think it should put it in the record, that both of these defendant's are young black African American males. I think the record should show that, if it doesn't already.

THE COURT: Mr. Neary?

MR. NEARY: I fail to see how anybody can find there's a statistical exclusion of blacks when two of the five sworn jurors are black individuals.

THE COURT: I don't think you've made a prima facie showing on this juror.

MR. GEREBER: Judge -----

THE COURT: It doesn't mean it can't be renewed at a later date as it stands now. But the showing on this one juror, I don't see it. I don't think you've come forward with enough argument on it.

(T. 278).[4]

The appellate division seems to disagree with the trial court's reasoning: petitioner

established a "pattern of stricken black jurors" from the panel existed, however, in the court's

_striking_

---

4. After petitioner entered this Batson objection (T. 278-79), the prosecutor raised a peremptory challenge against Carema Karim, a darked-skinned women whom appeared to be of India decent, but this was never confirmed (T. 283).

9

MR. NEARY:  Yes, as to Williams, Cambell and Duffy.

MR. GERBER: Judge, as to Ms. Williams, I just not for the record again that she is a black female.

MR. INSERO:  Judge, I'm making a <u>Batson</u> challenge here.

MR. GERBER:  And I would do the same, your honor.

MR. INSERO: This is another black African-American woman peremptorily being tossed by the Prosecutor.  This is number five, I think.  The record will show that.

THE COURT:  You have to make a motion, Mr. Inerso, with other than based on ---

MR. INSERO: It seems to be a systematic exclusion of African-American.  We have had in the last several rounds the same thing, and there clearly seems to be a pattern here of excluding black African-Americans from the jury.

Your Honor, I don't know if it's in the record, but I think it should put it in the record, that both of these defendant's are young black African American males.  I think the record should show that, if it doesn't already.

THE COURT: Mr. Neary?

MR. NEARY: I fail to see how anybody can find there's a statistical exclusion of blacks when two of the five sworn jurors are black individuals.

THE COURT: I don't think you've made a prima facie showing on this juror.

MR. GEREBER: Judge -----

THE COURT: It doesn't mean it can't be renewed at a later date as it stands now.  But the showing on this one juror, I don't see it.  I don't think you've come forward with enough argument on it.

(T. 278).[4]

The appellate division seems to disagree with the trial court's reasoning: petitioner

established a "pattern of stricken black jurors" from the panel existed, however, in the court's

---

4. After petitioner entered this <u>Batson</u> objection (T. 278-79), the prosecutor raised a peremptory challenge against Carema Karim, a darked-skinned women whom appeared to be of India decent, but this was never confirmed (T. 283).

view no other facts or circumstances showed the strikes were racially bias. See *People v. Devorce*, 253 A.D.2d 550 (2d Dept. 2002). This was contrary to and/or objectively unreasonable to Batson. *Yen v. Duncan*, 441 F.3d 851, 857-63 (9th Cir. 2006).

For example, In *Johnson v. California*, 125 S.Ct. 2410 (2005) the high court vacated a murder conviction (of a defendant convicted of killing a while child) emphasizing that a defendant need only show "an inference of discrimination purpose" and could not be required to show that a challenge was more likely than not the product of purposeful discrimination." *Id.*, at 2416-17; see also, *Williams v. Runnels*, 432 F.3d 1102, 1106 (9th Cir. 2006)(defendant satisfies Batson's first step "by producing evidence  sufficient to permit the trial Judge to draw an inference that discrimination occurred); *Jordan v. Lefevre*, 293 F.3d 587, 590 (2002).

Though the facts articulated by the defense rose to a level of "presumption of discrimination" by the State in its exercise of peremptory challenges, the court declared that while 50% to 75% of black jurors were excluded during the first and second round, the defense could not establish a "pattern of discrimination." (T. 141).  These facts of state court are troublesome from a constitutional vantage point, certainly under Batson other facts and circumstances existed to determine a prima facie case of discrimination under Batson was established. Cf., *Green v. Travis*, 414 F.3d at 299; Tankleff v. Senkowski, 135 F.3d 235 (2d Cir. 1998).

Notably, Mr. Landman, like Mr. Sears, had children in their 30's and both juror's gave similar answers. For instance, both served on jury's before, both were in the military and both had no problem with the terms reasonable doubt (T. 104-112).  In fact, Mr. Sears even showed his emotion for law enforcement officials in how proud he was of them for helping him when he was mugged (T. 85).  Despite these similarities the prosecutor choice to strike Mr. Sears and Ms. Godbold.

What is remarkable about Ms. Godbold is she gave similar answers as Ms. Smith an African-American women who was later struck peremptorily in the second round.  Like Mr. Sears both women stated they could listen to the evidence and the Judges instruction.  While

10

both women had religious afflictions, they assured the Judge those afflictions could be set aside, and they had no problems with the term reasonable doubt.  Even though they didn't like judging people.

Thus as argued by petitioner in state court this habeas court should conclude that the striking of 50% to 75% of the African-American juror's on petitioner's panel was a systematic attempt to exclude black females from serving as jurors during petitioner's trial.

### 2.    The Prosecutor's Failure to Give Race-Neutral Reason's for Strick's of Godbold and Sears is Contrary to Batson.

Batson's second step requires the prosecutor to give race-neutral reasons for his peremptory challenges.  *Yen v. Duncan*, 441 F.3d 851 (9th Cir. 2006).

At bar, the record shows that the prosecutor failed to give race neutral reasons even though he was invited to do so by the trial court.

> I say to that . . . .  I have reasons to justify my
> peremptory challenges of Godbold, but I don't
> think the defense has established and pattern
> being used by the People.

(T. 217).

It appears by that answer the prosecutor deliberately chose not to proffer a race neutral reason even when invited to do so by the trial court, choosing instead to rely on his tactical decision that the defense was obliged to show that discriminatory pattern.  What the prosecutor was required to do was secure his justification by arguing the "pattern" issue but at the same time providing the "race neutral" reason for Godbold like he later did for Smith.  This is not to say petitioner consents that their was a race neutral reason for Smith as the explanations by the prosecutor in the case at bar are less than credible and exist as a attempt to cover-up a discriminatory purpose.  This is especially so when one of the reasons given by the prosecutor was other African-American juror's (Onehenyo and Browne) had been selected, Ms. Smith lived in Mount Vernon.  The smokescreen by the people of selecting someone else who was African-American to sit on the jury, is immaterial to the wrong exclusion of African-Americans from petitioner's juror.  *Harris*, supra.  By determining not to provide such a reason, the prosecutor

11

prosecutor intentionally waived his right to give the requisite race-neutral reasons. As such, the state effectively forfeited the right to give any reason for the exclusion of juror's Godbold and Sears, and the trial Court to rule on the viability to this reasons. Consistent with Batson, the trial court could not simply disregard the unexplained challenge to Godbold. Under the circumstance of this case, the prosecutor can't have his cake and eat it too as the trial court's acceptance of the prosecutor's unexplained peremptory challenge to Godbold (and Sears) was objectively unreasonable and warrants the grant of the petition for habeas relief. *Yen v Duncan*, 441 F.3d 851, 863 (the Supreme Court has repeatedly explained . . . the prosecutor has the burden to produce a reason for the challenged strike at step two); see also, cf. *Sorto v. Herbert*, 364 F. Supp.2d 240, 245 (E.D.N.Y. 2004)(If I were the trial judge, I would have asked the Assistant District Attorney for an explanation for the challenge to . . . only because of the fast moving process of jury selection. . ); *Walker v Girdlich*, 410 F.3d 120, 121-22 (2d Cir. 2006)(the explanation offered by the prosecutor for her challenge of the individual juror was not race neutral).

3.    **The Trial Judges Failure to Follow the Third Step of Batson**

Additionally, at the third step of the Batson analysis the trial court has the responsibility to assess the prosecutor's credibility "under all the pertinent circumstances, and to weigh the asserted justification against the strength of the defendant's prima facie case under the totality of the circumstances." *United States v. Hill*, 146 F.3d 337, 342 (6th Cir. 1998); see also, *United States v. Stewart*, 65 F.3d 918, 923 (11th Cir. 195)  As the Second Circuit observed in *United States v. Alvarado*, 951 F.2d 22 (2d Cir. 1991), step three of the Batson analysis requires that the trial court consider whether a pattern of striking African-American women from petitioner's jury existed; truly such a pattern was established by the defense, and other additional facts and circumstances strengthen the pattern, but the trial court compromised the ability to properly assess the "totality of the circumstances" and the "strength of the prima facie case."

In this case, despite more then sufficient record evidence to support an inference of discrimination, the trial court didn't find that there was a prima facie case, and only offered an

off-hand ruling on the prosecutor's shady reason in case another court may disagree with it's reasons. The trial court unreasonable believed that a prima facie case didn't exist clearly calls into question the reasonableness of its ruling on pretext, and rebuts the presumption of correctness.[5]  Common sense dictates that a trier of fact's blindness to the existence of a prima facie case would likely extend to its determination of credibility with respect to the pretextual nature of the reasons for the challenges.

The record reflects that the trial court's acuity with respect to the prosecutor's motives was not reliable. After all, the trial court unreasonably took into consideration evidence of the prosecutor sitting other African-American's on the jury as evidence that the prosecutor's strikes were not race motivated, when in fact all the evidence points in the opposite direction.

Because, a Batson inquiry should focus on whether or not racial discrimination exists in the challenge to a minority juror, and not on the fact that other minorities may remain on the jury panel. *United States v. Johnson*, 873 F.2d 1137, 1139 n.1 (8th Cir. 1989). The Second Circuit has referred to the "elusive nature of the inquiry" in which a trial judge must engage when determining whether a defendant has raised an inference of discrimination sufficient to establish a *prima facie case. See Sorto v. Herbert*, 364 F.Supp.2d 240 (E.D.N.Y. 2004)(citing, *United States v. Diaz*, 176 F.3d 52, 75 [2d Cir. 1999]). While an individual juror does not have a right to sit on any particular petit jury, he or she does have a right not to be exclude from one on the account of race. *Powers v. Ohio*, 499 U.S. 400 (1991). For those reasons the Second Circuit has recently held that even the striking of one juror because of race is unconstitutional. See, e.g., *Walker v. Girdlich*, 410 F.3d 120 (2d Cir. 2005); see also, *People v Bolling*, 79

---

5. The AEDPA's presumption of correctness attaches to the state court's factual findings and curtailed a federal court's ability to substitute its judgment as to the credibility of witnesses for that of the state court, that presumption could be set aside if the federal habeas court "on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record. " 28 U.S.C. §2254(d)(8)(1994); *Purkett v. Elem*, 514 U.S. 765 (1995); *Marshall v. Lomberger*, 459 U.S. 422 (1983). Under the AEDPA, a petitioner may only rebut the presumption of correctness by presenting "clear and convincing evidence. 28 U.S.C. §2254(e)(1).

N.Y.2d 317 (1992).6

Petitioner's case also shows that at least up to five African-American (or darked-skinned) jurors were exclude by the prosecution for reasons that ranged from the sublime to the ridiculous. These relevant circumstances of the prosecutor striking 50% to 75% of minority jurors raises the required inference that during the several rounds of jury selection, when the Batson challenges were made, the prosecutor targeted minority jurors. *United States v. Stavrovlakis*, 952 F.2d 696 (2d Cir. 1992).

In *Overtone v. Newton*, 295 F.3d 270, 279 (2d Cir. 2002), the Second Circuit held "we have no doubt, that statistics, alone and without more, can, in appropriate circumstances, be sufficient to establish the requisite *prima facie* showing under Batson." *Id.*, at 278-79. While the Second Circuit in Overton did not state what it meant by appropriate circumstances, the state court, in this case, measured petitioner's Equal Protection challenge against a higher standard than set out in Batson . When the court decided

that while petitioner proved a pattern of strikes no other facts and circumstances exist to prove racial bias on the part of the prosecutor's strikes. *Johnson v. California*, 545 U.S. 162 (2005); see also, *Truesdal*, 427 F. Supp.2d at 291.

The inference of discrimination is furthered by the suspicions failure of the prosecutor to offer any justification for its challenges towards Godbold, Sears and Williams despite the eagerness of the prosecutor to supply reasons for the challenges to Smith, which were apparent to the trial court at the time the Batson challenges were made; these events easily satisfy the inference that discrimination had occurred. Under these circumstances, not only did the trial court err in concluding that not other facts and circumstances rose to the level to establish prima facie case of discrimination by the People's strikes. The relevant circumstances point to a conclusion that the prosecutor's reasons for striking minority jurors were in fact pretextual;

---

6. The Second Circuit has granted a pro se COA to resolve the question of whether the striking of "one juror," because of race, satisfies Batson's requirement of an inference of discrimination. *Cousin v. Bennett*, Dkt. 03-2837. (The case used by the state court to deny petitioner's appeal on the ground no other facts or circumstances exist to establish racial bias).

inasmuch as the record does not fairly support the trial court's determination that the challenge

to Godbold, Sears, Smith and Williams were non-pretextual.[7]   For those reasons, and for the remaining

reasons state supra, infra, this court should conclude that the prosecutor's failure to give race-neutral reasons for its strike's, and the trial court's failure to follow step two and three of Batson

requires granting petitioner's writ; or at the very least, an evidentiary hearing should be held to determine whether the prosecutor could offer a race-neutral for its strikes.

C.    **Appellate Counsel's Ineffectiveness**

In order for a criminal defendant to prevail on a claim of ineffective assistance of counsel defendant must show that counsel's representation fell below the standard as outlined in *Strickland v. Washington*, 466 U.S. 668 (1981).  See *Williams v. Taylor*, 529 U.S. 362 (2000).[8]

The record in petitioner's case presents a compelling portrait of what takes place when an attorney neglects his constitutional obligation to provide his client with zealous representation. For example, during his representation, appellate counsel failed to argue the prosecutor didn't give race neutral reasons for its' preemptory strikes of two black jurors which warrant's reversal; and failed to argue trial counsel's ineffectiveness in his failure to request that the court demand the prosecutor to give race neutral reasons for those strikes.

The federal constitution guarantees a defendant a right to effective assistance of counsel

---

7. Where the trial court rules on the ultimate question of intentional discrimination, a federal habeas court need not dwell on the first step because "the preliminary issue of whether the defendant has made a prima facie showing becomes moot. *Hernandez v. New York*, 500 U.S. 352, 359 (1991); *McKinney v. Artuz*, 326 F.3d 87, 98 (2d Cir. 2003).

8. Under the Anti-Terrorism and Effectively Death Penalty Act ("AEDPA"), a Federal Court is empowered  to grant a state prisoners habeas petition if the state court's adjudication of his federal claim constituted an "unreasonable application [] clearly established federal law as determined by the Supreme Court of the United States[,]" or if the decision was unreasonable in light of the evidence presented at the state court proceedings. See Hemstreet v. Greiner, 367 F.3d 139 (2d Cir. 2004), vacated on other grounds,  378 F.3d 265 (2d Cir. 2004).  An unreasonable application of federal law is different from merely an incorrect one.  William v Taylor, 529 U..S. 362 (2000).  In evaluating whether the unreasonable application criterion has been satisfied, a court must conclude the state court's adjudication reflects some additionally increment of incorrectness beyond error such that it may be said to be unreasonable. *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001).

15

on appeal. Evits v. Lucy, 469 U.S. 387 (1985). Typically, an ineffective assistance of appellate counsel claim is analyzed by comparing the issues appellate counsel chose to raise with the ones he or she omitted. *James v. Coughlin,* 22 F.3d 427 (2d Cir.. 1995). Additionally, petitioner may establish ineffective assistance of appellate counsel by demonstrating "counsel omitted significant and obvious issues while pursuing ones that were clearly and significantly weaker." See e.g., *Mayo v Henderson,* 13 F.3d 528, 533 (2d Cir. 1994). Petitioner may also establish appellate counsel's ineffectiveness by demonstrating the omission of a strong issue was not strategic." See *Gray v. Greer,* 800 F.2d 644 (9th Cir. 1986). Applying these standards there is no doubt, in this case, appellate counsel's failure to raise the omitted issues below constitute ineffective assistance of appellate counsel.

Contrary to the respondent's argument (Resp't's memo of law p. 24-26) petitioner demonstrates that appellate counsel erred in omitting the meritorious claim of ineffective assistance of trial counsel in not pressing the trial court to mandate the prosecutor to give a race neutral reasons for his strike constitutes ineffectiveness. See *Hollis v. Davis,* 941 F.2d 1471, 1479 (11th Cir. 1991)(failure to object to unconstitutional venire composition was unreasonable and fell below Strickland standard); *Miller v. Webb,* 385 F.3d 666 (6th Cir. 2004).

In this regard, petitioner ineffective claim surrounds the second step of Batson's three-step process -- i.e., the prosecutor's failure to articulate a race neutral explanation for striking (Ms. Godbold, Mr Sears and Williams). New York law mandates that once a prima facie case has been established, the prosecution must articulate an explanation for each of the preemptory strikes underlying the prima facie finding. *People v. Lavon,* 166 A.D.2d 670 (2d Dept. 1990); see also, *Horton v. Zant,* 941 F.2d 1449, 1459-60 (11th Cir. 1991). And Federal law is not to the contrary. *Caston v Costelo,* 74 F. Supp.2d 262, 275 n. 12 (E.D.N.Y. 1999); see also, *Jackson v. Herring,* 42 F.3d 1350, 1359-61 (11th Cir. 195).

In this case the prosecutor did not offer a race neutral explanation for the striking of at least (if not more then) two black (female) potential juror's and trial counsel did press the court to mandate the prosecutor to give race neutral reasons for its strike. This constitutes ineffective

16

assistance of counsel. See *People v. Wanger*, 104 A.D.2d 457, 479 N.Y.S.2d 66 (2d Dep't 184).

Notwithstanding those principles of law the state court seems to suggest petitioner was provided with effective assistance of counsel (See Resp't's Ex. "I"). This assertion of the State court was contrary to and/or [objectively] unreasonable to Strickland and its progeny. *Miller*, supra; see also *Eze v. Senkowski*, 321 F.3d 110, 122-23 (2d Cir. 2003).

Therefore, for substantially the same reasons as stated in Part B, herein, petitioner's writ of error coram nobis, this habeas court should conclude the state court's adjudication in denying his coram nobis application was objectively unreasonable, or at the very least hold a hearing to determine why counsel did not press the court to mandate the prosecutor to give race neutral reasons for his strikes. Cf., *Cox v. Donnelley*, 267 F.Supp.2d 418 (E.D.N.Y. 2003), vacated 387 F.3d 193 (2d Cir. 2004), on remand, 2004 WL 2786311, aff'd 432 F.3d 388 (2d Cir. 2005); see also, *Sparman v. Edwards*, 154 F.3d 51 (2d Cir. 1998).

## CONCLUSION

FOR THE FOREGOING REASONS PETITIONER'S WRIT OF HABEAS CORPUS SHOULD BE GRANTED, OR AT THE VERY LEAST, AN EVIDENTIARY HEARING SHOULD BE HELD.

DATED:     December 28 2006
           Stormville, New York

                    Respectfully Submitted,

                    *LAMont Devorce*

                    Lamont Devorce, 98 A 6535
                    Petitioner pro se
                    Green Haven Correctional Facility
                    P.O. Box 4000
                    Stormville, New York 12582-0010