```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
LAMONT DEVORCE,                           :
                                          :
                         Petitioner,      :    04 Civ. 6155 (KMK) (MDF)
                                          :
          - against-                      :    REPORT AND RECOMMENDATION
                                          :
SUPERINTENDENT PHILLIPS,                  :
Green Haven Correctional Facility,        :
                                          :
                         Respondent.      :
--------------------------------------------------------x
```

TO: THE HONORABLE KENNETH M. KARAS U.S.D.J.

Petitioner, *pro se,* seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254 to challenge his conviction for criminal possession of a weapon in the second degree, assault in the first degree, twelve counts of robbery in the first degree, and two counts of attempted robbery in the first degree in connection with an armed robbery which took place at a restaurant in Pelham, New York. The Westchester County Court, Judge Zambelli, sentenced Petitioner as a violent felony offender to concurrent maximum indeterminate terms of imprisonment of twelve and a half (12½) to twenty-five (25) years for each of the twelve counts of robbery in the first degree, six of which were to run consecutively with the maximum indeterminate terms of imprisonment of seven and a half (7½) to fifteen (15) years for each count of assault in the first degree, attempted robbery in the first degree, and criminal possession of a weapon in the second degree.

The Appellate Division, Second Department unanimously affirmed the conviction. *People v. Devorce,* 742 N.Y.S.2d 63 (N.Y. App. Div.), *lv. denied*, 98 N.Y.2d 709 (N.Y. 2002). Petitioner, proceeding *pro se*, then filed an application for a writ of error *coram nobis* to raise a claim of ineffective assistance of appellate counsel based on appellate counsel's failure to raise issues related to his *Batson* claim. Resp. Ex. G. The Appellate Division, Second Department

denied this application. *People* v. *Devorce,* 767 N.Y.S.2d 783 (N.Y. App. Div. 2003), *lv. denied,*1 N.Y.3d 626 (N.Y. 2004). Petitioner thereafter filed this petition for a writ of habeas corpus (Doc. # 1), raising several grounds for relief: (1) ineffective assistance of trial counsel in failing to request an accomplice instruction; (2) ineffective assistance of appellate counsel in failing to raise trial counsel's failure to preserve fully the issue of denial of equal protection during jury selection; and (3) a *Batson* violation.

After filing his petition, Petitioner returned to state court to file a motion to vacate the judgment pursuant to N.Y. Crim. Proc. Law § 440.10 and to set aside the sentence pursuant to N.Y. Crim. Proc. Law § 440.20. Resp. Ex. K. The Westchester County Court, Judge Zambelli, denied Petitioner's motion, Resp. Ex. N, and leave to appeal was denied by the Appellate Division, Second Department. Resp. Ex. Q. Thereafter, Petitioner apparently sought to file an amended habeas corpus petition (although no such document was ever filed with the Clerk of the Court), which would have added further grounds for relief. *See* Devorce Decl. [Doc. # 13] ¶ 14.[1] However, in his reply papers filed with the Court, Petitioner states that he is seeking habeas relief on only two grounds:

> For the reasons more fully set forth in the accompanying memorandum of
> law, it is the petitioner's position that the state court's resolution of
> Grounds One and Three of his habeas petition was an unreasonable
> application of clearly established federal law prescribed by the United

---

[1] The declaration states, "Petitioner then filed an amended habeas petition, dated November 1, 2004, to include as part of his petition the colorable claim of trial counsel's ineffectiveness in failing to object to the fact petitioner's equal protection rights were violated during his jury selection process; (2) [sic] petitioner was denied his right to a jury trial, when the court, instead of the jury, imposed an enhanced consecutive sentence that surpassed the statutory maximum sentence for which the jury found him guilty." The claim of trial counsel's ineffectiveness is subsumed within Petitioner's claim, initially set forth in his *coram nobis* application, that appellate counsel was ineffective in failing to raise on direct appeal the issue of trial counsel's ineffectiveness.

> States Supreme Court in *Batson v. Kentucky* and *Strickland v.
> Washington*; the remaining issues raised petitioner withdraws them from
> his habeas petition at this time.

*Id.* ¶ 16.

While it is unclear from the habeas petition itself what constitutes "Grounds One and Three," Petitioner's memorandum of law sets forth the following grounds for habeas relief, both of which were part of his original petition[2]: (1) that the trial court erred by denying his *Batson* challenges, and (2) that his appellate counsel was ineffective by failing to argue (a) that the prosecution did not give race-neutral reasons for its use of peremptory strikes against African-American potential jurors and (b) that trial counsel was ineffective in not insisting that the trial court order the prosecution to give such race-neutral reasons. For the reasons that follow, neither of these grounds provides a basis upon which relief may be granted in a habeas proceeding.

## BACKGROUND

At trial, defense counsel made *Batson* challenges during the first three rounds of the six-round jury selection process. During the first round of jury selection, the prosecution exercised two peremptory challenges, as the result of which, one African-American woman was struck from the panel. At that time, attorney for Petitioner's co-defendant stated in response to the prosecution's peremptories, "If I may, your Honor, I will just note for the record that they are the only two African Americans who are on this panel.[3] There don't appear all that many more

---

[2] Consequently, there is no need to address Respondent's arguments regarding Petitioner's claims for ineffective assistance of trial counsel in failing to request an accomplice jury charge and for an *Apprendi* violation. *See* Resp.'s Mem. of Law (Doc. # 6), Points II & IV.

[3] While defense counsel stated that both of the jurors who were peremptorily challenged by the prosecution during the first round were African-American, *see* Tr., 6/25/98, at 216-17, it became clear later on in the proceedings that the other challenged juror, Mr. Sears, was Caucasian. *See* Tr., 6/29/98, at

3

outside in the audience. And I don't see any reason for Miss Godbold, other than the fact that she's black." Tr., 6/25/98, at 216-17. Petitioner's attorney joined in the application and made a "*Batson* inquiry," Tr., 6/25/98, at 217, that was opposed by the prosecutor, who argued that defense counsel needed to "establish that some kind of pattern is being used by the People to eliminate jurors." *Id.* The trial judge agreed that no pattern had been established and did not require the prosecutor to provide reasons for the peremptory challenge. *Id.*

During the second round, the prosecutor exercised two peremptory challenges, as the result of which another African-American woman was struck from the panel. *See* Tr., 6/26/98, at 138-39. Again, Petitioner's attorney objected, "We have a black woman, a member of the jury panel. She has been challenged for cause. The cause challenge was denied. She's now being challenged peremptorily. This is the second African-American that the prosecutor has chosen to strike from this jury peremptorily, and I would like an explanation for his peremptory challenge in this case." *Id.* 139-40.

In the colloquy that followed, the court sought to make the record clear regarding the number of African-American jurors in each of the two rounds of jury selection that had taken place and the number of African-Americans that had been stricken peremptorily by the prosecution. As summed up by Petitioner's counsel, "Your Honor, numerically we have had four African-Americans chosen to be seated in the jury box in the two rounds we've done so far. Of those four, two have been peremptorily excluded by the prosecution." *Id.* 142. At that point, the judge, without stating whether defense counsel had established a *prima facie* case, asked one of the prosecutors, "Do you want to give an explanation for the peremptories . . .?" *Id.*

---

435.

The prosecution then proceeded to give its race-neutral reasons for the two peremptory challenges of African-American women during the first and second rounds of jury selection. With respect to the juror from round one, Ms. Godbold,[4] the court noted, "I think Mr. Neary [the prosecutor] said yesterday he didn't have to give [a race-neutral reason]. He had said yesterday he had them, but at the time the Defendant did not make a prima facie case." *Id.* 142-43. Nonetheless, the prosecutor proceeded to give the race-neutral reasons for the peremptory challenge of Ms. Godbold, including her "religious reservations . . . as far as making a judgment in the case," her body language, her lack of imagination, and her prior service as a juror in a case in which the jury came back with what the prosecution considered to be a "compromise verdict." *Id.* 143-44. The trial judge did not comment on the reasons provided with respect to Ms. Godbold.

The other prosecutor then provided the race-neutral reasons why they exercised a peremptory challenge with respect to Ms. Smith in the second round. These included

> . . . her religious beliefs, her being a Jehovah's Witness, and based upon her answers to questions that she's not comfortable in sitting in judgment of an individual or in this case these individuals . . .
>
> I think in the manner in which she answered questions she would have a considerable doubt in her mind about whether she was doing the right thing and coming up with the right verdict, and the fact that she would have a considerable amount of difficulty sitting in judgment of someone based upon the lengthy voir dire process with her, as well as the fact that she is a Mount Vernon resident . . . and she may know relatives of these Defendants, as well as she may have some concern about convicting two fellow Mount Vernon residents. . . .

*Id.* 144-45. Petitioner's attorney responded, "A lot of that is pure speculation. How can Mr.

---

4     The transcript from the second round of jury selection refers to her as Ms. Godpold.

Hughes [the prosecutor] possibly say this woman, Mrs. Smith, might possibly know relatives of the two Defendants in this case? I mean that's absurd. The fact that she's from Mount Vernon, are we going to toss off everybody from Mount Vernon or just everybody who is black?" *Id.* 145. The attorney for Petitioner's co-defendant added, "Again I reiterate that at this point Mr. Hughes is attempting to come up with race-neutral reasons, but I object strenuously to the religious reasons for keeping these people off. . . . But I do object to both the racial and the religious reasons." *Id.* 145-46.

The judge then issued her ruling, stating, "I didn't interpret the Jehovah's Witness as being a reason so much as maybe her hesitation in balancing the respective issues at stake. That's what I hear coming from the District Attorney on this. They have offered a race-neutral reason, so the Batson challenge is denied." *Id.* 146. Petitioner's attorney noted for the record that he took an exception to the judge's ruling.

Lastly, in round three of jury selection, the prosecution initially exercised three peremptory challenges (a fourth peremptory challenge was subsequently made[5]), one of which struck another African-American woman from the panel. Petitioner's attorney argued, "This is another black African-American woman peremptorily being tossed by the prosecutor. This is number five, I think. . . . It seems to be a systematic exclusion of black African-Americans. We have had in the last several rounds the same thing, and there clearly seems to be a pattern here of

---

[5] The fourth peremptory challenge made by the prosecution resulted in striking a "dark-skinned" woman from the panel. Tr., 6/26/98, at 283. However, all counsel agreed that the juror in question was not African-American, but rather, was Asian, probably Indian, *id.*, and defense counsel did not make a *Batson* challenge with respect to this juror.

excluding black African-Americans from the[] jury." *Id.* 278-79.[6] The prosecutor countered, "I fail to see how anybody can find there's statistical exclusion of blacks when two of the five sworn jurors are black individuals." *Id.* 279. The judge concluded, "I don't think you've made a prima facie showing on this juror. . . . It doesn't mean it can't be renewed at a later date as it stands now. But the showing on this one juror, I don't see it. I don't think you've come forward with enough argument on it." *Id.* Petitioner's attorney failed to renew the motion during the three subsequent rounds of jury selection.

On direct appeal from his conviction, Petitioner raised his *Batson* claim, but the Appellate Division, Second Department rejected it, declaring:

> The defendant failed to make a prima facie showing that the People's peremptory strikes were racially motivated pursuant to *Batson v Kentucky* (476 US 79). Although he alleged that the People had established a pattern of striking black jurors, he failed to cite any other facts or circumstances to support his claim of racial bias (*see People v Bolling*, 79 NY2d 317, 324; *People v Cousin*, 272 AD2d 477; *People v Kourani*, 256 AD2d 620; *People v Williams*, 253 AD2d 901; *People v Morla*, 245 AD2d 468).

*People v. Devorce,* 742 N.Y.S.2d 63 (N.Y. App. Div.), *lv. denied*, 98 N.Y.2d 709 (N.Y. 2002).

Petitioner's subsequent application for a writ of error of *coram nobis* was based on appellate counsel's failure to raise the issues of (i) the trial court's failure to order the prosecutors to provide race-neutral reasons for their peremptory strikes of African-American jurors, and (ii) trial counsel's ineffectiveness in failing to request that the trial judge direct the prosecutors to give race-neutral reasons for those peremptory strikes. These arguments were

---

[6] It appears from subsequent colloquy, on the prosecution's reverse-*Batson* challenge, that there were three African-American women in the jury box during the third round. Tr., 6/29/98, at 437-38. Of those three, one was selected to serve on the jury, Tr., 6/26/98, at 286, one was peremptorily struck, *id.* 278, and one was dismissed upon consent of the parties. *Id.* 245-46.

succinctly denied by the Appellate Division, Second Department:

> The appellant has failed to establish that he was denied the effective assistance of appellate counsel (*see Jones v. Barnes*, 463 US 745).

767 N.Y.S.2d 783 (N.Y. App. Div. 2003), *lv. denied*,1 N.Y.3d 626 (N.Y. 2004).

## **DISCUSSION**

### I.    Standard of Review

Where, as here, the Appellate Division has rendered a decision on the merits concerning each of the issues raised by Petitioner, review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). AEDPA states that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).[7]

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Torres*, 340 F.3d at 68 (internal quotation marks and citation omitted). And while "it is clear that the

---

[7]    Petitioner does not contend that the state court decisions in his case were "contrary to" clearly established Supreme Court precedent, which requires that "'the state court arrive[] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear. However, it is well-established in [the Second Circuit] that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Id.* at 68-69 (internal quotation marks and citations omitted).

## II.     Petitioner's *Batson* Claim

Petitioner claims that he is entitled to habeas relief since the prosecution exercised its peremptory challenges during jury selection in a race-based manner, thereby violating his rights under *Batson v. Kentucky*, 476 U.S. 79 (1986). Respondent opposes this claim both on the ground that it was procedurally defaulted in state court, as well as on the merits.

In seeking leave to appeal to the New York Court of Appeals, Petitioner's appellate counsel wrote a letter which stated as follows:

> . . . I request that the Court of Appeals consider Mr. Devorce's application, pursuant to CPL Sec. 460.20 and McKinney's New York Rules of Court Sec. 500.10, for a certificate granting leave to appeal to the New York State Court of Appeals. No previous application has been made. Appellant does not request oral argument.
>
> A copy of the Order of the Appellate Division, Second Department and Defendant-Appellant's brief are annexed hereto. . . .

Resp. Ex. D. The certificate denying leave states that "upon the records and proceedings herein, there is no question of law presented which ought to be reviewed by the Court of Appeals." Resp. Ex. F.

While Petitioner's application for leave to appeal did not specify the *Batson* claim, or any other claim, the Second Circuit has held that

9

> where a habeas petitioner (1) submits to the New York Court of Appeals his or her Appellate Division briefs and a letter application seeking leave to appeal that did not identify particular issues for that court's review, and (2) leave to appeal was denied by the New York Court of Appeals without stating that the denial was due to petitioner's failure to identify particular issues for review, then a habeas petitioner has properly exhausted his or her federal claims pursuant to § 2254.

*Galdamez v. Keane*, 394 F.3d 68, 70 (2d Cir. 2005). Therefore, this claim should not be dismissed based on a procedural default, and the Court should address the merits.

In evaluating a *Batson* challenge, a trial judge must employ the three-step process mandated by the Supreme Court:

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. *Id.*, at 97-98, 106 S.Ct. 1712. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (*per curiam*). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson, supra*, at 98, 106 S.Ct. 1712; *Miller-El v. Dretke*, 545 U.S. ----, ----, 125 S.Ct. 2317, 2331-2332, 162 L.Ed.2d 196 (2005). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett, supra*, at 768, 115 S.Ct. 1769.

*Rice v. Collins*, 546 U.S. 333, 338 (2006).

"The first step of the *Batson* analysis, requiring the showing of a *prima facie* case, is not meant to be onerous." *Sorto v. Herbert,* 497 F. 3d 163, 170 (2d Cir. 2007) (citing *Johnson v. California,* 545 U.S. 162, 170 (2005)). However, it "still requires consideration of all relevant circumstances." *Id.* (quoting *Batson,* 476 U.S. at 96). In *Batson*, the Supreme Court set forth

instances in which a *prima facie* showing would be found:

> [A] pattern of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative.

476 U.S. at 97.

The Second Circuit has held that establishment of a *prima facie* case requires a defendant to "show facts and circumstances that raise an inference that the prosecutor used the peremptory challenge to exclude potential jurors from the petit jury on account of their race." *Sorto,* 497 F.3d at 170 (quoting *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002)). "The discharge of this burden may entail a review of prosecutorial strikes over the span of the selection process: Thus this Court has held, on *habeas* review, that a state court does not act unreasonably where it denies a *Batson* challenge early in the selection process." *Id.* (citation omitted). Moreover, "[w]here a litigant points to a pattern of strikes as evidence of discrimination, statistical disparities are to be examined as part of the *Batson prima facie* inquiry. The need to examine statistical disparities may command a wait-and-see approach." *Id.* (internal quotation marks and citation omitted). Thus, as the Second Circuit has held, "an early *Batson* challenge limits the state court's ability to properly assess a *prima facie* case":

> the trial judge never confronts, and the trial record does not reveal, what the statistics would show at the conclusion of the jury selection. If those statistics sufficiently establish the inference that challenges are based on race, the court could then implement the *Batson* process to ensure that impermissible challenges are not allowed. If, on the other hand, the statistics at the conclusion fail to support a sufficient inference, there would be no need to engage in the process.

*Id.* (quoting *Overton*, 295 F.3d at 279) (alterations omitted).

11

The determination of the existence of a *prima facie* case under *Batson* is a mixed question of law and fact, subject to the AEDPA standard of habeas review under which a state court decision will be disturbed only if it "was contrary to, or involved an unreasonable application of, clearly established Federal law." *Overton*, 295 F.3d at 276-77.

In this case, the prosecutor used two peremptory challenges in the first round of jury selection and struck one of two African-American potential jurors in the jury box. At this point, Petitioner's attorney made his first *Batson* challenge. The other African-American ended up being seated on the jury. Likewise, during the second round of jury selection, the prosecutor used two peremptory challenges and struck one of the two African-American potential jurors in the box. Petitioner's attorney challenged this peremptory strike as well. Again, the other African-American ended up being seated on the jury. Finally, in the third round of jury selection, the prosecutor used four peremptory challenges and struck one of three African-American potential jurors in the box. Petitioner's attorney made his last *Batson* challenge. One of the other two African-Americans had already been excused upon consent of the parties, and the third African-American ended up being seated on the jury.

The trial judge denied the *Batson* challenges in the first and third rounds for failure to establish a *prima facie* case. Given that Petitioner raised his first *Batson* challenge after only two peremptory strikes, only one of which was used to strike an African-American, the state court acted reasonably in denying this challenge on the ground that no pattern had yet been established.[8] In the third round, the trial judge once again found that Petitioner's attorney had

---

[8] In response to defense counsel's "Batson inquiry" in the first round, the prosecutor responded that "they have to establish that some kind of pattern is being used by the People to eliminate jurors." Tr., 6/25/08, at 217. While evidence of a pattern of strikes is not the only possible method of establishing a

12

failed to make a *prima facie* showing with respect to the one African-American juror stricken peremptorily by the prosecution, where his attorney's only argument was a general statement that there was a pattern of excluding African-Americans from the jury. However, the judge stated that counsel could renew the *Batson* challenge at a later point in time. Nonetheless, although jury selection continued for an additional three rounds, Petitioner's attorney never did so.[9] As in *Overton*, the state trial judge in Petitioner's case acted reasonably in "refus[ing] to implement *Batson*'s process for testing each questioned challenge midway in the process." 295 F.3d at 280.

In the second round, the trial judge did not rule on whether a *prima facie* case had been established but nonetheless denied the *Batson* challenge, finding that a race-neutral reason had been provided by the prosecutor. *See* Tr., 6/26/98, at 146 ("They have offered a race-neutral reason, so the Batson challenge is denied.").[10] "Under AEDPA, . . . a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)(2). Thus, a federal habeas court can only grant [petitioner's] petition if it was unreasonable to credit the

---

*prima facie* case, *see Batson*, 476 U.S. at 97, defense counsel cited no other "relevant circumstances" to the court in support of their *Batson* challenge.

[9] The strength of Petitioner's claim is further undercut by the fact that his attorney failed to renew the *Batson* challenge even after the court developed the record with respect to the racial composition of potential jurors placed in the box during the first four rounds of jury selection, when it considered the prosecution's reverse-*Batson* challenge. *See* Tr., 6/29/98, at 424-30, 433-38.

[10] "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, 500 U.S. 352, 359 (1991).

prosecutor's race-neutral explanations for the *Batson* challenge. State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' §2254(e)(1)." *Rice*, 546 U.S. at 338-39 (citation omitted). While "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, . . . on habeas review that does not suffice to supersede the trial court's credibility determination." *Id.* at 341-42.

In reviewing the record in this case, it cannot be said that it was objectively unreasonable for the trial judge to conclude that the prosecutor offered a credible, race-neutral reason for his peremptory challenge of Ms. Smith during the second round. During *voir dire*, Ms. Smith had stated, "I am one of Jehovah's Witnesses. I have moral principles. I'm not very comfortable sitting in judgment of another person. Yes, I could listen to evidence and act on it, but as to say I'm judging this person, I do not think this is my prerogative to judge." Tr., 6/26/98, at 43. Later on she explained that even though she could judge based on the evidence presented, she "would hate to have my judgment wrong and somebody to suffer because I misjudged a person . . . ." *Id.* 91.

Initially, the prosecution challenged Ms. Smith for cause "based upon the fact she's religious and has indicated the problems she has being a Jehovah's Witness and sitting in judgment of someone . . . as well as the fact that she is a resident of Mount Vernon . . . she may very well know a relative of the Defendant or somebody in the family." *Id.* 125. That challenge was denied by the trial judge, who stated, "I'm going to deny that application, because although she may struggle she'll follow the court's directive." *Id.* 128.

The prosecution then exercised a peremptory challenge against Ms. Smith, and when

14

Petitioner's attorney demanded an explanation for the challenge, the prosecution offered the same reasons – that she was a Jehovah's Witness and would have difficulty sitting in judgment of someone and that she was from Mount Vernon and might know relatives of the defendants. *See id.* 144-45. Petitioner's attorney argued that the fact that Ms. Smith was from Mount Vernon was not a valid reason for striking her from the jury, and counsel for Petitioner's co-defendant objected to "the racial and the religious reasons" for striking Ms. Smith. *Id.* However, neither defense attorney provided an argument as to how the reasons given by the prosecution were a pretext for purposeful racial discrimination, and the judge concluded that the prosecution had offered a race-neutral reason for its challenge.[11] Petitioner points to no evidence in the record which would "compel the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications." *Rice*, 546 U.S. at 341; *see also id.* at 338 ("'[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.'") (citation omitted). Consequently, the trial judge acted reasonably in denying the *Batson* challenge in the second round of jury selection.

In sum, the state court did not unreasonably apply clearly established federal law in denying all three of Petitioner's *Batson* challenges, and this claim cannot provide a basis for habeas relief.

### III. Petitioner's Ineffective Assistance of Appellate Counsel Claim

Petitioner claims he is also entitled to habeas relief on the ground of ineffective

---

[11] Despite the fact that in the second round of jury selection the prosecution also provided its race-neutral reasons for challenging Ms. Godbold in the first round, the trial judge's ruling seemed to be directed only towards the challenge to Ms. Smith. However, the trial judge had already ruled in the first round that defense counsel had failed to make a *prima facie* showing on its *Batson* challenge concerning Ms. Godbold.

assistance of appellate counsel based on appellate counsel's failure to (1) raise the issue of the prosecutor's failure to provide race-neutral reasons for his peremptory strikes of African-American jurors, and (2) raise the issue of trial counsel's ineffectiveness in failing to request that the trial judge direct the prosecutor to give race-neutral reasons for those peremptory strikes. These same arguments formed the basis of Petitioner's application for a writ of error *coram nobis*, which, as explained above, was denied by the Appellate Division.

To state a valid claim for ineffective assistance of counsel, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), that (1) his attorney's performance fell below an "objective standard of reasonableness," *id.* at 688; and (2) his attorney's deficient performance prejudiced him, *i.e.*, a "reasonable probability" exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]he constitutional right to effective assistance of counsel extends to appellate counsel." *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citing *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)). Thus, in order to establish his entitlement to habeas relief on this claim under AEDPA's deferential standard of review, Petitioner must demonstrate that the Appellate Division's application of *Strickland* was "objectively unreasonable." *Torres*, 340 F.3d at 69; *see also Sellan*, 261 F.3d at 315 ("Under § 2254(d)(1), we must determine not whether the state court was incorrect or erroneous in rejecting [petitioner's] ineffective assistance claim, but whether it was 'objectively unreasonable' in doing so," *i.e.*, whether there was "some increment of incorrectness beyond error . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.") (internal quotation marks and citations omitted).

Appellate counsel is not required to make every nonfrivolous argument that could be made, *see Jones v. Barnes*, 463 U.S. 745, 751-54 (1983), and the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Sellan*, 261 F.3d at 317 (internal quotation marks and citations omitted). Nonetheless, "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

In his habeas petition, as in his application for a writ of error *coram nobis*, Petitioner's claim revolves around the second step in the *Batson* analysis, *i.e.*, the requirement that the prosecutor give race-neutral reasons for his peremptory strikes of certain prospective jurors. However, as explained above, it was only in the first and third rounds of jury selection that the prosecutors did not provide race-neutral reasons for their peremptory challenges. And it cannot be said that trial counsel was ineffective in not requesting that the judge order the prosecution to give race-neutral reasons when, in those two rounds, the judge had already ruled that no *prima facie* showing had been made.[12] Furthermore, appellate counsel fully briefed the *Batson* issue on direct appeal, arguing that the trial court erred in denying defense counsel's challenges to the prosecution's use of peremptory strikes to exclude African-Americans from the jury. *See* Resp. Ex. A at 21-30. Nevertheless, the Appellate Division dismissed Petitioner's *Batson* claim,

---

[12] Notably, Petitioner's claim for ineffective assistance of appellate counsel is based on the false premise, set forth in his *coram nobis* application, that the trial court "agreed that Mr. Devorce established a prima facie case of purposeful discrimination," Resp. Ex. G at 4, and that therefore, both his trial counsel and the trial judge erred in not requiring the prosecutor to come forward with race-neutral reasons for his peremptory challenges.

17

holding that the "defendant failed to make a prima facie showing that the People's peremptory strikes were racially motivated pursuant to *Batson v Kentucky* (476 US 79)." *People v. Devorce*, 742 N.Y.S.2d 63 (N.Y. App. Div.), *lv. denied*, 98 N.Y.2d 709 (N.Y. 2002).

Having fully briefed the merits of Petitioner's *Batson* claim on direct appeal, it cannot be said that his appellate counsel's performance was constitutionally deficient simply because he failed to make the additional argument that trial counsel's handling of the *Batson* challenges during jury selection was ineffective. Nor did the *coram nobis* court unreasonably apply *Strickland* in finding that Petitioner had not been denied the effective assistance of appellate counsel. Thus, having found that the first element of the *Strickland* standard was not unreasonably applied by the state court, there is no need to address the second element of the standard, *i.e.*, whether Petitioner was prejudiced by unprofessional errors. *Sellan*, 261 F.3d at 317.

In sum, Petitioner's claim of ineffective assistance of appellate counsel cannot form the basis for habeas relief.

## **CONCLUSION**

Based on the foregoing, I respectfully recommend that Your Honor deny the Petitioner's petition for a writ of habeas corpus in its entirety.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days (*see* Fed. R. Civ. P. 6(a)), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas, at the United States Courthouse, 300 Quarropas Street, Room 533, White Plains, New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Karas. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Karas and should *not* be made to the undersigned.

Dated: July _/_, 2008
      White Plains, New York

                                  Respectfully submitted,

                                  MARK D. FOX
                                  UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been sent to the following:

The Honorable Kenneth M. Karas

Mr. Lamont DeVorce (98-A-6535)
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

Alexander Levine, Esq.
Assistant District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601